IN THE UNITED STATED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE M. MIHELCIC,<br><br>Plaintiff,<br><br>vs.<br><br>MERCY HEALTH SERVICES – IOWA, CORP. d/b/a MERCY MEDICAL CENTER – DUBUQUE; MEDICAL ASSOCIATES CLINIC, P.C.; MICHAEL CHAPMAN, M.D.; HONORIO CACERES, M.D.; and CHARLES MORROW, M.D.; MICHAEL B. KUENNEN, M.D.,<br><br>Defendants. | DOCKET NO. 16-cv-1002-EJM<br><br>**"Diversity"/Jury** |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff Jacqueline M. Mihelcic, for her claims for relief against Defendants Mercy Health Services – Iowa, Corp. d/b/a Mercy Medical Center – Dubuque; Medical Associates Clinic, P.C., Michael Chapman, M.D., Honorio Caceres, M.D., Charles Morrow, M.D., and Michael Kuennen, M.D., states:

1. Plaintiff Jacqueline M. Mihelcic is a resident of Grant County, Wisconsin.

2. Defendant Mercy Health Services – Iowa, Corp. (hereafter referred to as "Mercy Dubuque") is a Delaware corporation with its principal place of business in Dubuque County, Iowa, doing business as Mercy Medical Center – Dubuque.

3. Defendant Medical Associates Clinic, P.C. (hereafter referred to as "Medical Associates Clinic") is an Iowa corporation with its principal place of business in Dubuque County, Iowa.

1

4. Defendant Michael Chapman, M.D. (hereinafter referred to as "Dr. Chapman") was, all times relevant, a resident of Dubuque County, Iowa and a physician licensed to practice medicine in the State of Iowa.

5. Defendant Honorio Caceres, M.D. (hereinafter referred to as "Dr. Caceres") was, all times relevant, a resident of Dubuque County, Iowa and a physician licensed to practice medicine in the State of Iowa.

6. Defendant Charles Morrow, M.D. (hereinafter referred to as "Dr. Morrow") was, all times relevant, a resident of Dubuque County, Iowa and a physician licensed to practice medicine in the State of Iowa.

7. Defendant Michael Kuennen, M.D. (hereinafter referred to as "Dr. Kuennen") was, all times relevant, a resident of Dubuque County, Iowa and a physician licensed to practice medicine in the State of Iowa.

8. At all times material hereto, Defendant Mercy Dubuque employed physicians, nurses, technicians, assistants, pharmacists, and agents to provide medical care and treatment.

9. At all times material hereto, Defendant Medical Associates Clinic was the employer of Defendant physicians Chapman, Caceres, Morrow, Kuennen and others who provided medical care to Jacqueline M. Mihelcic.

10. As alleged herein, all acts or omissions by Defendant physicians Chapman, Caceres, Morrow, Kuennen and others were committed in the scope of and during the course of their employment with Medical Associates Clinic.

11. Jurisdiction is founded on diversity of citizenship and amount in controversy (28 U.S.C. § 1332(a)(1)):

a. Plaintiff Jacqueline Mihelcic is a resident of the State of Wisconsin.

   b. Defendants Chapman, Caceres, Morrow, Kuennen were at all times relevant material residents of the State of Iowa and physicians licensed to practice in the State of Iowa.

   c. Defendant Mercy Dubuque is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Dubuque County, Iowa.

   d. Defendant Medical Associates Clinic is a corporation organized and existing under the laws of the State of Iowa with its principal place of business in Dubuque, Dubuque County, Iowa, and is believed to be the employer of Defendants Michael Chapman, M.D.; Honorio Caceres, M.D; Charles Morrow, M.D.; and Michael Kuennen, M.D.

   e. The matter in controversy exceeds, exclusive if interest and costs, the sum of $75,000.00.

12. Pursuant to 20 U.S.C. § 1391(a), venue is proper in the Northern District of Iowa because a substantial part of the events giving rise to Plaintiff's claims for relief as alleged herein, including the medical care that is the subject of this lawsuit and resulting injuries to the Plaintiff, occurred in Dubuque, Dubuque County, Iowa.

13. Plaintiff Jacqueline Mihelcic had a history of left-sided hearing loss since 1995.

14. An audiology evaluation in 2011 revealed mild to profound sensorineural hearing loss in right ear and severe to profound sensorineural hearing loss in left ear with word recognition in quiet excellent in right ear and poor in left.

15. In 2011, Ms. Mihelcic was fitted with bilateral custom molds for a Contralateral Routing of Signals (CROS) hearing system and was able to hear much better.
16. In 2013, a follow up audiology evaluation revealed no significant change from 2011.
17. On December 9, 2013, Ms. Mihelcic underwent a cementless left total hip arthroplasty performed by Dr. Morrow at Mercy Dubuque.
18. On January 24, 2014, Ms. Mihelcic reported fevers, chills, sweats, and increased pain, and was admitted to Mercy Dubuque by Dr. Chapman with an elevated white cell count for work up for possible early infection of a total hip.
19. A culture of Ms. Mihelcic's left hip aspirate grew coagulase negative staphyloccus susceptible to eight antibiotics and was penicillin resistant.
20. On January 24, 2014, Dr. Chapman ordered IV Vancomycin and Ertapenem.
21. As of the time of her admission, Ms. Milhaelcic's providers, including Defendants, knew, or should have known, or her history related to hearing loss.
22. On January 25, 2014, Dr. Chapman performed sharp debridement and irrigation surgery on Ms. Mihelcic's left hip, using Gentamycin for irrigation and placement Vancomycin powder into the incision.
23. The culture from the left hip surgery again showed coagulase negative staphylococcus susceptible to the same eight antibiotics.
24. Following the January 25, 2014 debridement surgery, Ms. Mihelcic awakened in the recovery room with a significant change in her hearing.
25. Dr. Caceres was consulted regarding antibiotic coverage, which he noted was appropriate.

26. Dr. Kuennen noted acute change in Ms. Mihelcic's hearing on the right side starting after the January 25, 2014 surgery, with chronic hearing loss on the left of uncertain etiology or what to do and noted she was not on any antibiotics that should have caused a hearing loss.

27. On January 28, 2014, an audiogram was performed showing a significant decrease in right ear hearing and stable left ear.

28. Retesting on January 31, 2014 showed the right ear had worsened.

29. Dr. Timothy King subsequently saw Ms. Mihelcic in consultation noting an obvious sudden change in hearing to severe to profound hearing loss bilaterally.

30. Dr. King noted Ms. Mihelcic had received four doses of Vancomycin, an ototoxic medication, in and around the time of the acute hearing loss and she had an antecedent history of acute hearing loss.

31. Dr. King ordered Vancomycin be discontinued.

32. On January 28, 2014, Dr. Caceres replaced Vancomycin with Daptomycin, discontinuing it on January 29 after one dose. He recommended discharge anytime on Keflex 500 mg three times a day for four weeks.

33. Ms. Mihelcic continued to have loud ringing in her right ear and severe hearing loss throughout her hospital stay and after discharge.

34. Ms. Mihelcic developed increased hip pain and drainage. A February 6, 2014 MRI showed a sinus tract entering from the left hip, through subcutaneous tissue into deep layers to the joint level.

35. On February 8, 2014, Dr. Morrow performed surgery to remove the left total hip arthroplasty components and place a spacer, with post-operative diagnosis of periprosthetic sepsis left total hip arthroplasty.

36. On February 13, 2014, Ms. Mihelcic was discharged to a skilled nursing facility, receiving Invanz and Rifampin for six weeks.

37. On May 14, 2014, Ms. Mihelcic was seen at the University of Wisconsin for an otological consultation where the assessment was likely Vancomycin related ototoxicity, severe flat sensorineural hearing loss on right and moderately severe to severe sensorineural hearing loss on left with speech discrimination score of 0% on right and 16% on left.

38. On June 8, 2014, Ms. Mihelcic underwent a hip revision surgery at the University of Wisconsin.

39. On October 30, 2014, surgery was performed to place bilateral cochlear implants for Ms. Mihelcic with initial stimulation on December 4, 2014.

40. Ms. Mihelcic is now able to communicate using her cochlear implants, a phone with an amplifier, and lip reading, although she has continuing difficulties.

41. Ms. Mihelcic has pain, difficulty ambulating, and disability due to her left hip prosthetic sepsis.

42. Defendants Mercy Dubuque, Medical Associates Clinic, Michael Chapman, M.D., Honorio Caceres, M.D., and Charles Morrow, M.D., were negligent in providing improper care and then failing to properly and timely diagnose Ms. Mihelcic's conditions to avoid severe complications and other conditions that developed and caused permanent injuries and damages.

43. As a direct result of the negligence of Defendants, Jacqueline Mihelcic suffered ototoxicity causing severe and permanent injuries, including hearing loss and ear damage.

44. As a direct result of the negligence of Defendants, Jacqueline Mihelcic also suffered severe and permanent harm to her left hip and other injuries due to sepsis.

45. As a result of her injuries, Jacqueline Mihelcic has in the past and will in the future suffer mental and physical pain and anguish, loss of function, deformity, loss of hearing, disability, loss of earnings and earning capacity, loss of enjoyment of life, injuries to other parts of her body, and permanent scarring; and expenses for medical care and therapy, hospitalization, surgeries, drugs, medicine, implants, equipment, and other remedial treatment for said injuries.

46. Defendants Mercy Dubuque and Medical Associates Clinic, through their employees, physicians, nurses, technicians, assistants, pharmacists, and agents were negligent in the following particulars:

    a. Prescribing and administering ototoxic medications to a patient with a known history of hearing loss;

    b. Failing to prescribe appropriate medications for Jacqueline Mihelcic;

    c. Failing to obtain informed consent and disclose alternatives before administering a high risk medication;

    d. Failing to timely recognize and respond to known side effects and risks of medications prescribed for Jacqueline Mihelcic;

    e. Failing to properly review and evaluate Jacqueline Mihelcic's medications;

f. Failing to properly and timely respond to Jacqueline Mihelcic's signs and symptoms;

   g. Failing to timely and properly treat post-surgical infection;

   h. Failing to provide safe and appropriate care to Jacqueline Mihelcic;

   i. Failing to provide Jacqueline Mihelcic with care and treatment consistent with applicable standards of medical care; and

   j. Other unspecified acts of negligence.

47. Defendants Michael Chapman, M.D., Charles Morrow, M.D., Honorio Caceres, M.D. and Michael Kuennen, M.D. were negligent in the following particulars:

   a. Prescribing and administering ototoxic medications to a patient with a known history of hearing loss;

   b. Failing to prescribe appropriate medications for Jacqueline Mihelcic;

   c. Failing to obtain informed consent and disclose alternatives before administering a high risk medication;

   d. Failing to timely recognize and respond to known side effects and risks of medications prescribed for Jacqueline Mihelcic;

   e. Failing to properly review and evaluate Jacqueline Mihelcic's medications;

   f. Failing to properly and timely respond to Jacqueline Mihelcic's signs and symptoms;

   g. Failing to timely and properly treat post-surgical infection;

   h. Failing to provide safe and appropriate care to Jacqueline Mihelcic;

   i. Failing to provide Jacqueline Mihelcic with care and treatment consistent with applicable standards of medical care; and

j. Other unspecified acts of negligence.

48. The negligence of Defendants was the cause of the injuries and damages sustained by Jacqueline Mihelcic, and said injuries and damages would not have happened except for the negligence of said Defendants.

49. Defendant Mercy Dubuque is vicariously liable for the harms caused by the negligence of its employees and agents.

50. Defendant Medical Associates Clinic is vicariously liable for the harms caused by the negligence of its employees and agents, including Defendants Michael Chapman, M.D., Honorio Caceres, M.D., Charles Morrow, M.D., and Michael Kuennen, M.D.

51. The injuries and damages sustained by Jacqueline Mihelcic are within the scope of Defendants' liability and said injuries and damages arose from the same general types of danger that defendants should have avoided through safe and proper medical care.

WHEREFORE, Jacqueline Mihelcic prays for judgment against Defendants Mercy Health Services – Iowa, Corp. d/b/a Mercy Medical Center – Dubuque; Medical Associates Clinic, P.C.; Michael Chapman, M.D.; Honorio Caceres, M.D.; Charles Morrow, M.D., and Michael Kuennen, M.D. and each of them, in an amount which will fully and completely compensate her for her damages, for interest thereon as provided by law, and for the costs of this action.

### JURY DEMAND

Plaintiff hereby demands trial by jury.

/ *Brian P. Galligan* /

_____
BRIAN P. GALLIGAN  AT0002632
GALLIGAN REID  P.C.
300 Walnut Street, Suite 5
Des Moines, Iowa, 50309-2239
Telephone:	(515) 282-3333
Facsimile:	(515) 282-0318
Email:		bgalligan@galliganlaw.com

ATTORNEY FOR PLAINTIFF